JUDGE CASTEL

FILE COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CARTIER INTERNATIONAL N.V.; CARTIER
CREATION STUDIO, S.A.; OFFICINE PANERAI
N.V.,

08 CV 01904

CIV. ACTION NO.:

        Plaintiffs,

v.

LUXLUX d/b/a WWW.LUXLUX.COM; MARK
ROGIVUE a/k/a MARK LOO; DENISE LOO;
BRENDA LOO; JOHN AND JANE DOES 1-10
(Unidentified); and XYZ COMPANIES 1-10
(Unidentified),

        Defendants.

COMPLAINT
(JURY TRIAL DEMANDED)



RECEIVED
FEB 8 2008
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiffs Cartier International N.V., Cartier Creation Studio, Officine Panerai,

N.V. (collectively, "Plaintiffs") hereby file this Complaint for trademark counterfeiting,

trademark infringement, trade dress infringement, design patent infringement, false designation

of origin and unfair competition against Defendants LUXLUX d/b/a www.luxlux.com; MARK

ROGIVUE a/k/a MARK LOO; DENISE LOO; BRENDA LOO; JOHN AND JANE DOES 1-10

(Unidentified); and XYZ COMPANIES 1-10 (Unidentified) (collectively, "Defendants"); and

alleges as follows:

      1.    Defendants are selling exact replicas of Cartier's world-famous SANTOS 100

wristwatch and copying Cartier's patented design and famous trade dress. There can be no

question that this infringement is intentional because Defendants are marketing the watch as a

"Cartier Santos 100 Look-Alike" watch.

      2.    Defendants are also selling exact replicas of Panerai's world famous PANERAI

LUMINOR wristwatch and copying Panerai's famous trademarks and trade dress. There can be

no question that this infringement is intentional because Defendants are marketing the watch as a "Panerai Look-Alike' watch.

## THE PARTIES

3.      Plaintiff CARTIER INTERNATIONAL N.V. ("CNV") is a corporation organized and existing under the laws of the Netherlands, having its principal place of business at Scharlooweg 33, Curaçao, Netherlands Antilles.

4.      Plaintiff CARTIER CREATION STUDIO, S.A. ("CCS") is a corporation, organized and existing under the laws of Switzerland, having its principal place of business at 8, Boulevard James-Fazy, Geneva, Switzerland  (CNV and CCS are herein referred to collectively as "Cartier").

5.      Plaintiff OFFICINE PANERAI, N.V. ("Panerai") is a corporation organized and existing under the laws of the Netherlands, having its principal place of business at Scharlooweg 33, Curaçao, Netherlands Antilles.

6.      Upon information and belief, Defendant Lux Lux d/b/a www.luxlux.com is an unregistered business entity located on the Internet, resolving at the Uniform Resource Locater http://www.luxlux.com ("Lux Lux") and is operated from the following addresses: P.O. Box 3303, Rocklin CA 95677, a mailbox located at 2351 Sunset Boulevard 170423, Rocklin, CA 95765, and a residence located at 530 Finders Way, El Dorado Hills, CA 95762.

7.      Upon information and belief, Defendant Mark Rogivue a/k/a Mark Loo ("Rogivue") is an individual doing business at P.O. Box 3303, Rocklin CA 95677, having a mailbox located at 2351 Sunset Boulevard 170423, Rocklin, CA 95765, and having a residence located at 530 Finders Way, El Dorado Hills, CA 95762.

2

*NY 238,681,256*

8.    Upon information and belief, Defendant Denise Loo ("Denise") is an individual doing business at P.O. Box 3303, Rocklin CA 95677, having a mailbox located at 2351 Sunset Boulevard 170423, Rocklin, CA 95765, and having a residence located at 530 Finders Way, El Dorado Hills, CA 95762.

9.    Upon information and belief, Defendant Brenda Loo ("Brenda") is an individual doing business at P.O. Box 3303, Rocklin CA 95677, having a mailbox located at 2351 Sunset Boulevard 170423, Rocklin, CA 95765, and having a residence at 3111 Strand Road, Rocklin, CA 95765.

10.    Upon information and belief various yet-to-be-identified JOHN DOEs and JANE DOEs are individuals and/or business entities who, through their agents, servants and employees, are residents of and/or transact business in this Judicial District and are engaged with Defendants in the manufacture, distribution, offer for sale and/or sale of merchandise infringing Plaintiffs' rights as set forth more fully herein.  The identities of the various John Doe and Jane Doe defendants are not presently known and the Complaint herein will be amended, if appropriate, to include the name or names of said individuals when such information becomes available (each a "Doe" and collectively, "Does").

11.    Upon information and belief various yet-to-be-identified XYZ COMPANIES are business entities that, through their agents, servants and employees, are residents of and/or transact business in this Judicial District and are engaged with Defendants in the manufacture, distribution, offer for sale and/or sale of goods infringing the rights of Plaintiffs as set forth more fully herein. The identities of such defendants are not presently known and the Complaint herein will be amended, if appropriate, to include the names of the actual defendants when such information becomes available (each a "Defendant Company" and collectively, "Defendants'

3

Companies"). Collectively, Defendants Lux Lux, Rogivue, Denise, Brenda, Does, and Defendants' Companies are referred to herein as "Defendants."

## NATURE OF ACTION; JURISDICTION AND VENUE

12.     This is an action for injunctive relief and damages for trademark counterfeiting, trademark infringement, trade dress infringement and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended ("Lanham Act"), for design patent infringement under 35 U.S.C. §§ 1, *et seq.*, and for common law trademark and trade dress infringement and unfair competition under the laws of the State of New York.

13.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiffs' claims for common law trademark and trade dress infringement and unfair competition under the laws of the State of New York.

14.     This Court has personal jurisdiction over Defendants in that Defendants do business in the State of New York.

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(a) in that Defendants are an entities or individuals located in and/or subject to personal jurisdiction in this Judicial District.

## CARTIER'S INTELLECTUAL PROPERTY IN ITS SANTOS 100 WATCH

16.     Cartier watches are some of the preeminent symbols of luxury in the world. Louis Francois Cartier, master jeweler to Europe's crowned heads, founded the House of Cartier in 1847. Cartier created the first women's wristwatch in 1888 and in 1904 created the first wristwatch to utilize a leather strap.

4

17.    Since as early as 1898, Cartier and its predecessors-in-interest and associated companies have been using Cartier's trademarks, trade names, trade dress and proprietary designs, as more particularly defined and described below, in connection with the advertising and sale of fine timepieces and wrist watches and other products in foreign commerce.  Since 1909, Cartier's trademarks, trade names, trade dress and proprietary designs have been used in connection with the advertising and sale of watches and other products in interstate commerce, including in the State of New York and in this Judicial District.

18.    Cartier's distinctively-designed timepieces are closely associated with Cartier in the eyes of the public, customers, and the luxury goods industry.  Specifically, Cartier has used its inventive and original designs and features on the Cartier SANTOS 100, among many other watches ("Cartier Watches").

19.    The Cartier SANTOS 100 was launched by Cartier in 2004 inspired by the original Santos de Cartier watch created by Louis Cartier in 1904 for his friend Alberto Santos-Dumont.

20.    Cartier and its predecessor-in-interest and associated companies are the owners and/or the exclusive United States licensees of, *inter alia*, the entire right, title and interest in and to the federally registered trademarks relating to the Cartier SANTOS 100, copies of which are annexed hereto collectively as Exhibit A (collectively the "CARTIER SANTOS 100 Trademarks").

21.    Cartier's use of the name SANTOS for watches is the subject of United States Trademark Registration Number 1,344,284 registered on June 25, 1985.

22.    Cartier's use of the name SANTOS DE CARTIER for watches is the subject of United States Trademark Registration Number 1,391,539 registered on April 29, 1986.

5

23.    All of the registrations set forth in <u>Exhibit A</u> are valid, subsisting, unrevoked and uncancelled. The registration of these marks constitutes *prima facie* evidence of their validity and conclusive evidence of Cartier's exclusive right to use the CARTIER SANTOS 100 Marks in commerce in connection with the goods named therein, and commercially related goods. The registration of the CARTIER SANTOS 100 Marks also constitutes constructive notice to Defendants of Cartier's ownership and exclusive rights in the CARTIER SANTOS 100 Marks.

24.    Cartier is also the owner of the trade name "Cartier Santos 100," which has been used to identify CARTIER SANTOS 100 watches in the United States and throughout the World.

25.    In addition to the CARTIER SANTOS 100 Trademarks, the public has come to recognize the distinctive design of the CARTIER SANTOS 100 watch as emanating from Cartier (the "Cartier SANTOS Trade Dress").

26.    The features of the Cartier SANTOS Trade Dress include, but are not limited to, the following features on the watch face, watch case and watch crown, as shown on the picture of a genuine Cartier SANTOS 100 watch below:



6

- The watch face bears a distinctive 'chapter ring' or 'minute guide' located between the center of the dial and numerals.

- The watch face features distinctive art-deco-style roman numerals. Each numeral inclines to conform to the angle/direction of the watch hands at such time as the hands are juxtaposed to that numeral.

- The watch case, made of steel or gold, is square with rounded edges.

- The bezel is prominent in polished steel or gold and is connected to the watch case with eight prominent screws designed to resemble an airplane's rivets placement corresponding to 1, 2, 4, 5, 7, 8 10 and 11 o'clock.

- The crown is octagonal and over-sized, and the right side of the watch case extends out around the crown to protect it.

- The tip of the tip of the crown is an offsetting blue color.

27.    Cartier is the owner of the entire right, title and interest in and to the Cartier SANTOS 100 Trade Dress.

28.    Cartier is also the owner of the entire right, title and interest in and to numerous United States Patents including but not limited to U.S. Design Patent Number D508,421 for the design of the Cartier SANTOS 100 Watch (the "CARTIER SANTOS 100 Patent" or the "'421 Patent"). A copy of the CARTIER SANTOS 100 Patent is annexed hereto as Exhibit B.

29.    The CARTIER SANTOS 100 Trademark, CARTIER SANTOS 100 Trade Dress and CARTIER SANTOS 100 Patent are collectively referred to as the "CARTIER SANTOS 100 Intellectual Property."

30.    Cartier maintains strict quality control standards for all Cartier SANTOS 100 watches. All Cartier SANTOS 100 watches are inspected and approved by Cartier prior to

7

distribution and sale. Cartier Watches are sold with a warranty, and backed up by a full-service staff of full-time employees.

31.     Cartier has manufactured, marketed and advertised CARTIER SANTOS 100 watches so that the public associates them with the idea of extraordinary design, materials, workmanship and reliability. Cartier displays its CARTIER SANTOS 100 Intellectual Property in their advertising and promotional materials of genuine CARTIER SANTOS 100 watches. The Cartier SANTOS 100 Intellectual Property Dress has been widely promoted, both in the United States and throughout the World. To date, Cartier has spent millions of dollars in advertising and promoting their goods, including Cartier SANTOS 100 watches.

32.     The public, customers, and the luxury goods industry have come to recognize that products bearing the CARTIER SANTOS 100 Intellectual Property originate with Cartier. Furthermore, customers, potential customers, and other members of the public associate the CARTIER SANTOS 100 Intellectual Property with products of exceptional materials, style and precision workmanship. These trademarks have become famous and highly valuable, possessing strong secondary meaning among consumers.

33.     The CARTIER SANTOS 100 Intellectual Property are famous not only within the United States, but throughout the World, entitling them to the greater protection afforded marks of such international distinction under both United States Law and International Treaties, such as the Paris Convention and the TRIPS Agreement, both of which were entered into by the United States.

34.     CARTIER SANTOS 100 watches bearing the CARTIER SANTOS 100 Intellectual Property, have been and are now recognized by the trade and public as those of Cartier exclusively.

8

## PANERAI'S INTELLECTUAL PROPERTY IN ITS PANERAI LUMINOR WATCH

35.    Since as early as 1860, Plaintiffs and their predecessors-in-interest and associated companies have been using the PANERAI mark in connection with the advertising and sale of precision watches as well as military compasses, torches, and depth gauge ("Panerai Products") in interstate, intrastate, and foreign commerce including commerce in the State of New York and in this Judicial District.

36.    Panerai is one of the preeminent symbols of luxury in the World.  In 1997, Plaintiffs' parent company purchased Italian watchmaker Officine Panerai, one of the World's most well-known and respected watch brands, and all the goodwill associated therewith.

37.    Panerai's continuous and broad use of the PANERAI Trademarks (as hereinafter defined) has expanded their renown and enabled them to achieve celebrity in the luxury goods market.  The PANERAI Trademarks are highly visible as a symbol of quality and status. Specifically, Panerai has used its inventive and original designs and features on the Panerai LUMINOR, among other watches ("Panerai Watches"; collectively with the Cartier Watches, "Plaintiffs' Watches").

38.    The Panerai LUMINOR was originally created in the early 1940s to meet the Italian Navy's need for a watch that was reliable, resistant and easy to read underwater.  Today's design keeps the original distinctive features.

39.    Panerai and its predecessor-in-interest and associated companies is the owner and/or exclusive United States licensee of, *inter alia*, the entire right, title and interest in and to the federally registered Panerai trademarks relating to the PANERAI wristwatch, copies of which are annexed hereto collectively as Exhibit C (collectively, the "PANERAI Trademarks").

9

40.    Panerai's design of the Panerai LUMINOR watch is the subject of United States Trademark Registration Number 3,178,943, registered on December 5, 2006.

41.    Panerai's use of the name PANERAI for watches is the subject of United States Trademark Registration Number 2,340,290, registered in April 11, 2000.

42.    All of the registrations included in Exhibit C are valid, subsisting, unrevoked and uncancelled. The registration of these marks constitutes *prima facie* evidence of their validity and conclusive evidence of Panerai's exclusive right to use the PANERAI Trademarks in commerce in connection with the goods named therein, and commercially related goods. The registration of the PANERAI Trademarks constitutes constructive notice to Defendants of Panerai's ownership of and exclusive rights in the PANERAI Trademarks.

43.    Panerai is also the owner of the trade name "PANERAI", which has been used to identify Panerai Products in the United States.

44.    The distinct elements of the Panerai Products have achieved secondary meaning in the marketplace by virtue of many years of continuous use in commerce and substantial investments in the advertisement and promotion of Panerai Products.

45.    Panerai's advertising, promotional, and marketing efforts have created widespread and favorable public acceptance and recognition of the PANERAI Trademarks as preeminent symbols of luxury and fine craftsmanship. These trademarks have become famous and highly valuable, possessing strong secondary meaning among consumers.

46.    The PANERAI Trademarks are famous not only within the United States, but throughout the World, entitling them to the greater protection afforded marks of such international distinction under both United States Law and International Treaties, such as the

10

Paris Convention and the TRIPS Agreement, both of which were entered into by the United States.

47.    In addition to the PANERAI Trademarks, the public has come to recognize the distinctive design of the PANERAI LUMINOR watch as emanating from Panerai (the "Panerai LUMINOR Trade Dress").

48.    The features of the Panerai LUMINOR Trade Dress include, but are not limited to, the following features on the watch face, watch case and watch crown, as shown on the picture of a genuine Panerai LUMINOR watch below:



- The watch face bears distinctive easy-to-read Arabic numerals.
- The watch case, made of polished steel or brushed titanium, is rounded and 44 millimeters in diameter.
- The watch case includes a distinctive lever device protecting the crown.
- The bezel is made of polished steel.

11

49.    Panerai is the owner of the entire right, title and interest in and to the Panerai LUMINIOR Trade Dress.

50.    The PANERAI Trademarks and Panerai Luminor Trade Dress are collectively referred to as the "PANERAI Intellectual Property."

51.    Panerai maintains strict quality control standards for all of the Panerai Products. Panerai Products are inspected and approved by Panerai prior to distribution and sale.

52.    Panerai Products are distributed through a worldwide network of authorized Panerai dealers. Panerai Products are sold with a warranty, and backed up by a full-service staff of fulltime employees.

53.    Panerai has manufactured, marketed and advertised the Panerai LUMINOR watches so that the public associates them with the idea of extraordinary design, materials, workmanship and reliability. Panerai displays its Panerai LUMINOR Intellectual Property in its advertising and promotion all materials of genuine Panerai LUMINOR watches. The Panerai LUMINOR Intellectual Property has been widely promoted, both in the United States and throughout the World. To date, Panerai has spent millions of dollars in advertising and promoting their goods, including Panerai LUMINOR watches.

54.    The public, customers, and the luxury goods industry have come to recognize that products bearing the Panerai LUMINOR

55.    The Panerai Products, marked with the PANERAI Trademarks, have been and are now recognized by the trade and public as those of Panerai or its predecessors-in-interest exclusively.

56.    Collectively, the CARTIER SANTOS 100 Trade Dress and PANERAI LUMINOR Trade Dress are referred to as "Plaintiffs' Trade Dress."

12

57.    Collectively, the CARTIER SANTOS 100 Trademarks and PANERAI Trademarks are referred to as "Plaintiffs' Trademarks."

58.    Collectively, the CARTIER SANTOS 100 Intellectual Property and the PANERAI LUMINOR Intellectual Property are referred to as "Plaintiffs' Intellectual Property."

## DEFENDANTS' ILLEGAL CONDUCT

59.    Defendants, without authorization or license from Plaintiffs, have knowingly and willfully used, reproduced, and/or infringed Plaintiffs' Intellectual Property in connection with their manufacturing, distributing, exporting, importing, offering to sell and selling infringing copies of Plaintiffs' Watches (the "Infringing Products") in New York and in interstate commerce. Defendants have been offering for sale and/or selling Infringing Products on the Lux Lux website, www.luxlux.com.

60.    Defendants' Infringing Products incorporate most of the distinct and non-functional elements of Plaintiffs' Intellectual Property associated with the Cartier SANTOS 100 and Panerai LUMINOR watches.

61.    Defendants have designed certain Infringing Products to look identical to genuine Cartier SANTOS 100 watches, as shown the picture below, including but not limited to the following similarities:

13

NY 238,681,256




- The Infringing Product's watch face bears the same distinctive 'chapter ring' or 'minute guide' located between the center of the dial and numerals with every fifth minute being thicker and bolder as a genuine Cartier SANTOS 100 watches.

- The Infringing Product's watch face features the exact same distinctive art-deco-style Roman numerals as a Cartier SANTOS 100 watches, each inclining to conform to the angle/direction of the watch hands at such time as the hands are juxtaposed to that numeral.

- The Infringing Product's watch case is square with rounded edges just like a genuine Cartier SANTOS 100 watch.

- The Infringing Product's bezel is made of steel and is connected to the watch case with eight prominent screws identical to a genuine CARTIER SANTOS 100 watch with placement corresponding to 1, 2, 4, 5, 7, 8 10 and 11 o'clock.

14

- The Infringing Product's crown is octagonal and over-sized and the right side of the watch case extends out around the crown to protect it.

- The tip of the Infringing Product's crown is an offsetting blue color.

62.    Defendants have designed other Infringing Products to look identical to genuine Panerai LUMINOR Watches, as shown the picture below, including but not limited to the following similarities:

 

- The Infringing Product's watch face bears the same distinctive easy-to-read Arabic numerals as a genuine PANERIA LUMINOR watch.

- The Infringing Product's watch is nearly identical to a genuine PANERIA LUMINOR watch case and claims to be 44 millimeters in diameter.

- The Infringing Product's watch case includes the same lever device protecting the crown as a genuine PANERIA LUMINOR watch

15

- Just like a genuine PANERIA LUMINOR watch, the Infringing Product's bezel is made of stainless steel.

63.    Even though they are of significantly inferior quality, the Infringing Products appear superficially similar, and in some cases superficially identical, to genuine Plaintiffs' Watches.

64.    The use by Defendants of Plaintiffs' Trade Dress and Plaintiffs' Trademarks on or in connection with the offering for sale, selling, and distributing of the Infringing Products is likely to cause confusion, or to cause mistake, or to deceive consumers.

65.    The Infringing Products are not genuine Plaintiffs' Watches bearing Plaintiffs' Intellectual Property. Plaintiffs did not manufacture, inspect or package the Infringing Products, and did not approve the Infringing Products for sale and/or distribution. Plaintiffs have inspected samples of the Infringing Products and deemed them to be infringing.

## COUNT ONE

### DESIGN PATENT INFRINGEMENT
### (35 U.S.C. § 1, et seq. - U.S. Patent No. D508,421)

66.    Cartier repeats and realleges paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.    Defendants are importing, manufacturing, advertising, distributing, offering to sell and/or selling watches that infringe the '421 Patent. Such sales have taken place in this District and elsewhere in the United States.

68.    Defendants have no license to conduct the activities specified in Paragraph 59.

69.    Defendants have willfully infringed the '421 Patent in violation of 35 U.S.C. § 1 et seq.

16

70.    The infringement of the CARTIER SANTOS 100 Patent by Defendants has and will irreparably damage Cartier and deprive Cartier of sales, profits and royalties that Cartier would have made or could enjoy in the future, and has in other respects injured Cartier and will continue to injure and damage Cartier, including by loss of future profits and royalties, unless Defendants are enjoined from infringing the CARTIER SANTOS 100 Patent.

71.    Defendants' infringement will continue unless enjoined by this Court, as Cartier lacks an adequate remedy at law.

72.    As a result, Cartier is entitled to injunctive relief pursuant to 35 U.S.C. § 283 and is entitled to damages, costs, interest and attorneys' fees pursuant to 35 U.S.C §§ 284 and 285 and/or 289.

## COUNT TWO

### FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
### (15 U.S.C. § 1114)

73.    Plaintiffs repeat and reallege paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.    Plaintiffs' Trademarks and the goodwill of the businesses associated with them in the United States and throughout the World are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public mind with the products and services of the very highest quality and reputation finding their source in Plaintiffs.

75.    Upon information and belief, without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in Plaintiffs' Trademarks, and the fact that Defendants' Infringing Products bear marks which are confusingly similar to Plaintiffs' Trademarks, Defendants have manufactured, distributed, offered for sale and/or sold the

17

Infringing Products to the consuming public in direct competition with Plaintiffs' sale of genuine Plaintiffs' Watches, in or affecting interstate commerce.

76.     Defendants' use of copies or simulations of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products being sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

77.     Plaintiffs have no adequate remedy at law.  If the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to Plaintiffs' goodwill and reputation.

**COUNT THREE**

**FEDERAL TRADE DRESS INFRINGEMENT AND
FALSE DESIGNATION OF ORIGIN
(15 U.S.C. § 1125(a))**

78.     Plaintiffs repeat and reallege paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.     Plaintiffs' Trade Dress is inherently distinctive.

80.     As a result of the experience, care, and service of Plaintiffs in producing and providing Plaintiffs' Watches, Plaintiffs' Watches have become widely known and have acquired a worldwide reputation for excellence.  Moreover, Plaintiffs' Trade Dress has become associated with Plaintiffs' Watches, and has come to symbolize the reputation for quality and excellence of Plaintiffs' Watches.  As such, and because consumers identify Plaintiffs Watches with products having their source in Plaintiffs, Plaintiffs' Trade Dress has attained secondary meaning.

18

81.    Plaintiffs' Trade Dress is non-functional.

82.    Defendants' use of trade dress which infringes upon Plaintiffs' Trade Dress is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products originate from, are associated with, or are otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

83.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of Plaintiffs' Trade Dress in connection with their goods and services in interstate commerce constitutes trade dress infringement and false designation of origin.

84.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to their valuable Plaintiffs' Trade Dress, and other damages in an amount to be proved at trial.

85.    Plaintiffs have no adequate remedy at law.  If the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to Plaintiffs' goodwill and reputation.

**COUNT FOUR**

**FEDERAL TRADEMARK DILUTION**
**(15 U.S.C. § 1125(c))**

86.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.    Plaintiffs' Trade Dress and Plaintiffs' Trademarks are "famous marks" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1) and have been famous marks prior to Defendants' conduct as alleged herein.

19

88.    Defendants' manufacture, import, export, advertisement, distribution, offer for sale, and sale in commerce of the Infringing Products dilutes the distinctive quality of Plaintiffs' Trade Dress and Plaintiffs' Trademarks, and was done with the willful intent to trade on Plaintiffs' reputation and/or to cause dilution of Plaintiffs' Trade Dress and Plaintiffs' Trademarks.

89.    Defendants' unauthorized use of Plaintiffs' Trade Dress and Plaintiffs' Trademarks on or in connection with the Infringing Products was done with notice and full knowledge that such manufacture, import, export, advertisement, distribution, offer for sale, and sale was not authorized or licensed by Plaintiffs.

90.    Defendants' aforesaid acts are in knowing and willful violation of Plaintiffs' rights under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

91.    Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to Plaintiffs' goodwill and reputation.

## COUNT FIVE

### DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK STATE LAW
(New York General Business Law § 349)

92.    Plaintiffs repeat and reallege paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.    Defendants, without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in Plaintiffs' Intellectual Property, have distributed, advertised, offered for sale and/or sold Infringing Products employing copies of Plaintiffs'

20

Intellectual Property to the consuming public in violation of New York General Business Law § 349.

94.    Defendants' use of copies or simulations of Plaintiffs' Intellectual Property is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of Defendants' Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products originate from, are associated with, or are otherwise authorized by Plaintiffs.

95.    Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

96.    Defendants' acts have caused and will continue to cause Plaintiffs irreparable harm unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

### COUNT SIX

### NEW YORK TRADEMARK DILUTION
#### (New York General Business Law § 360(l))

97.    Plaintiffs repeat and reallege paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98.    Defendants' acts have caused damage to Plaintiffs by tarnishing Plaintiffs' valuable reputation and diluting or blurring the distinctiveness of Plaintiffs' Trademarks and Plaintiffs' Trade Dress in violation of New York General Business Law § 360(l), and will continue to tarnish and destroy the value of Plaintiffs' Trade Dress and Plaintiffs' Trademarks unless enjoined by this Court.

99.    Defendants' acts have caused and will continue to cause Plaintiffs irreparable harm unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

21

## COUNT SEVEN

### (TRADE DRESS AND TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NEW YORK COMMON LAW)

100.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 99 of this Complaint as if set forth fully herein.

101.   Defendants have reproduced, copied and imitated Plaintiffs' Trade Dress and Plaintiffs' Trademarks by designing, selling and or offering for sale Infringing Products that are confusingly similar to Plaintiffs' Trade Dress, Plaintiffs' Trademarks, the CARTIER SANTOS 100 watches, and the PANERAI LUMINOR watches.

102.   Defendants' actions constitute trade dress infringement and unfair competition under New York common law.

103.   The acts of Defendants complained of herein constitute an attempt to trade on the goodwill which Plaintiffs have developed, all to the damage of Plaintiffs.

104.   Defendants' conduct has caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be ascertained at trial.

105.   If the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to its goodwill and reputation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.   Preliminarily and permanently restraining and enjoining Defendants and all persons in active concert and participation with Defendants, from importing, advertising, forwarding, displaying (either on a website or otherwise), selling, offering for sale, or in any way commercially exploiting the Infringing Products or Plaintiffs' Intellectual Property, as well as any and all other products that are unlawful and unauthorized copies of Plaintiffs' Watches.

22

B.     Preliminarily and permanently restraining and enjoining Defendants and all persons in active concert and participation with Defendants, from any further conduct suggesting or tending to suggest that any products Defendants distributes, promotes, or offers for sale are directly or indirectly sponsored by, approved by, or affiliated with Plaintiffs.

C.     Preliminarily and permanently restraining and enjoining Defendants and all persons in active concert and participation with Defendants from any further conveying the impression to the public by Defendants' advertising, packaging, offering for sale or otherwise that any products offered by Defendants are directly or indirectly sponsored by, approved by, or affiliated with Plaintiffs.

D.     Preliminarily and permanently restraining and enjoining Defendants and all persons in active concert and participation with Defendants from passing off, inducing or enabling others to sell or pass off any goods as products produced by Plaintiffs which are not in fact genuine Plaintiffs' goods or not produced under the control and supervision of Plaintiffs and approved by Plaintiffs.

E.     Preliminarily and permanently restraining and enjoining Defendants and all persons in active concert and participation with Defendants from further diluting Plaintiffs' Trademarks or Plaintiffs' Trade Dress.

F.     Preliminarily and permanently restraining and enjoining Defendants and all persons in active concert and participation with Defendants from otherwise competing unfairly with Plaintiffs in any manner.

G.     That Defendants be required to deliver to Plaintiffs for destruction any and all goods in Defendants' possession or under Defendants' control that were or are being advertised, promoted, offered for sale or sold in connection with Plaintiffs' Trademarks or Plaintiffs' Trade Dress, whether alone or in combination with any words or designs.

H.     That Defendants be required to deliver to Plaintiffs for destruction any and all catalogs, circulars and other printed material in Defendants' possession or under Defendants' control displaying or promoting the goods which were or are being advertised, promoted, offered

23

for sale or sold in connection with Plaintiffs' Trademarks or Plaintiffs' Trade Dress, whether alone or in combination with any words or designs.

I.  That Defendants be ordered under 15 U.S.C. § 1116(a) to file, with the Court and serve on Plaintiffs, within 30 days of the entry of injunction requested herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which Defendants has complied with the permanent injunction.

J.  Awarding Plaintiffs damages, costs, attorney's fees, and an accounting of Defendants' profits attributable to Defendants' unauthorized use of Plaintiffs' Trademarks and Plaintiffs' Trade Dress.

K.  Awarding Cartier damages in the form of lost profits or in the alternative, not less than a reasonable royalty attributable to Defendants' infringement of the '421 Patent, and that such award be increased up to three times pursuant to 35 U.S.C § 284; and/or Defendants' total profits attributable to Defendants' infringement of the '421 Patent, pursuant to 35 U.S.C. § 289.

L.  Finding this case exceptional pursuant to 35 U.S.C. § 285 and awarding Cartier attorneys' fees incurred hereunder as related to Defendants' infringement of the '421 Patent.

M.  Awarding Plaintiffs punitive damages in an amount sufficient to punish Defendants for their infringement of Plaintiffs' Trademarks and Plaintiffs Trade Dress.

N.  Awarding Plaintiffs pre-judgment and post-judgment interest on any monetary awards.

O.  Granting Plaintiffs any other and further relief as the Court may deem just and proper.

24

## DEMAND FOR JURY TRIAL

DEMAND FOR JURY TRIAL. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial on all issues triable by a jury.

Dated:   February 26, 2008
        New York, New York

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:_____

Harley I. Lewin (HL 1819)
Scott Gelin (SG 9599)
200 Park Avenue, MetLife Building
New York, NY 10166
(212) 801-9200

*Attorneys for Plaintiffs*
*Cartier International N.V., Cartier Creation*
*Studio, S.A., Officine Panerai, N.V.*

25

Exhibit A

Trademark Electronic Search System (TESS)                                    Page 1 of 2

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 26 04:22:18 EST 2008*

**TESS HOME**   **NEW USER**   **STRUCTURED**   **FREE FORM**   **BROWSE DICT**   **SEARCH OG**   **BOTTOM**   **HELP**

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

**TARR Status**   **ASSIGN Status**   **TDR**   **TTAB Status**   *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | SANTOS |
| **Translations** | THE ENGLISH TRANSLATION OF THE WORD "SANTOS" IS SAINTS |
| **Goods and Services** | IC 014. US 027. G & S: WATCHES. FIRST USE: 19781000. FIRST USE IN COMMERCE: 19781000 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73495783 |
| **Filing Date** | August 20, 1984 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 16, 1985 |
| **Registration Number** | 1344284 |
| **Registration Date** | June 25, 1985 |
| **Owner** | (REGISTRANT) CARTIER, INCORPORATED CORPORATION DELAWARE 653 FIFTH AVENUE NEW YORK NEW YORK 10022 |
| | (LAST LISTED OWNER) CARTIER INTERNATIONAL, B.V. CORPORATION NETHERLANDS HERENGRACHT 436 B. P. ANSTERDAM NETHERLANDS |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | HELEN M. O'SHAUGHNESSY |
| **Prior Registrations** | 1248792;1248793;1252656 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20050308. |
| **Renewal** | 1ST RENEWAL 20050308 |
| **Live/Dead Indicator** | LIVE |

**TESS HOME**   **NEW USER**   **STRUCTURED**   **FREE FORM**   **BROWSE DICT**   **SEARCH OG**   **TOP**   **HELP**

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Trademark Electronic Search System (TESS)                                    Page 1 of 2

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 26 04:22:18 EST 2008*

`TESS HOME`  `NEW USER`  `STRUCTURED`  `FREE FORM`  `BROWSE DICT`  `SEARCH OG`  `BOTTOM`  `HELP`

`Logout`  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

`TARR Status`  `ASSIGN Status`  `TDR`  `TTAB Status`  *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | SANTOS DE CARTIER |
| **Translations** | THE WORD "SANTOS" TRANSLATES INTO "SAINTS". |
| **Goods and Services** | IC 014. US 027. G & S: WATCHES. FIRST USE: 19781100. FIRST USE IN COMMERCE: 19781100 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73549509 |
| **Filing Date** | July 22, 1985 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | February 4, 1986 |
| **Registration Number** | 1391539 |
| **Registration Date** | April 29, 1986 |
| **Owner** | (REGISTRANT) CARTIER, INCORPORATED CORPORATION DELAWARE 653 FIFTH AVENUE NEW YORK NEW YORK 10022 |
| | (LAST LISTED OWNER) CARTIER INTERNATIONAL, B.V. CORPORATION ASSIGNEE OF NETHERLANDS HERENGRACHT 436 B.P. AMSTERDAM NETHERLANDS |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | HELEN M. O'SHAUGHNESSY |
| **Prior Registrations** | 1210131;1248792;1248793;1252656;1274709 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20060327. |
| **Renewal** | 1ST RENEWAL 20060327 |
| **Live/Dead Indicator** | LIVE |

`TESS HOME`  `NEW USER`  `STRUCTURED`  `FREE FORM`  `BROWSE DICT`  `SEARCH OG`  `TOP`  `HELP`

Exhibit B



US00D508421S

(12) **United States Design Patent**
Diltoer

(10) Patent No.:      **US D508,421 S**
(45) Date of Patent:    ** **Aug. 16, 2005**

(54) WATCH

(75) Inventor:  Jacques Diltoer, La Garenne (FR)

(73) Assignee:  Cartier International B.V., Amsterdam (NL)

(**) Term:  14 Years

(21) Appl. No.: 29/211,185

(22) Filed:  Aug. 12, 2004

(30)    **Foreign Application Priority Data**

Feb. 13, 2004   (EM) ................................. 000134531-0005

(51) LOC (8) Cl. ..................................................... 10-02
(52) U.S. Cl. ..................................................... D10/39
(58) Field of Search ............ D10/30–39; 368/280–282, 368/276–277, 285, 293–294

(56)         **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D251,056 S | * | 2/1979 | Perrin ........................ D10/39 |
| D262,949 S | * | 2/1982 | Perrin ........................ D10/32 |
| D267,549 S | * | 1/1983 | Kanoui ........................ D10/39 |

| | | | |
|---|---|---|---|
| D278,130 S | * | 3/1985 | Houlihan et al. ........... D10/38 |
| D422,514 S | * | 4/2000 | Diltoer et al. .............. D10/39 |

* cited by examiner

*Primary Examiner*—Nelson C. Holtje
(74) *Attorney, Agent, or Firm*—Kalow & Springut LLP

(57)         CLAIM

The ornamental design for a watch, as shown and described.

DESCRIPTION

FIG. 1 is a perspective view of a watch;
FIG. 2 is a front view thereof;
FIG. 3 is a rear view thereof;
FIG. 4 is a right-side view thereof;
FIG. 5 is a left-side view thereof;
FIG. 6 is a top view;
FIG. 7 is a bottom view thereof;
FIG. 8 is a perspective view of another embodiment of a watch; and,
FIG. 9 is a front view thereof, the rear, right-side, left-side, top and bottom views thereof being the same as FIGS. 3–7. The broken lines are for illustrative purposes only and form no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



**U.S. Patent**      Aug. 16, 2005      Sheet 1 of 4      **US D508,421 S**



Fig. 1



Fig. 2

Case 1:08-cv-01904-PKC    Document 1-2    Filed 02/26/2008    Page 7 of 12



Fig. 3



Fig. 4          Fig. 5



Fig. 6



Fig. 7



Fig. 8



Fig. 9

Exhibit C

Trademark Electronic Search System (TESS)

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 26 04:22:18 EST 2008*

**TESS HOME** **NEW USER** **STRUCTURED** **FREE FORM** **BROWSE DICT** **SEARCH OG** **BOTTOM** **HELP**

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

**TARR Status** **ASSIGN Status** **TDR** **TTAB Status** *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Goods and Services** | IC 014. US 002 027 028 050. G & S: watches. FIRST USE: 19940000. FIRST USE IN COMMERCE: 19940000 |
| **Mark Drawing Code** | (2) DESIGN ONLY |
| **Design Search Code** | 17.01.01 - Pocket watches; Stop watches; Watches; Wristwatches |
| **Serial Number** | 76630389 |
| **Filing Date** | February 7, 2005 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 19, 2006 |
| **Registration Number** | 3178943 |
| **Registration Date** | December 5, 2006 |
| **Owner** | (REGISTRANT) Cartier International B.V. COMPANY NETHERLANDS Herengracht 436 B.P. 3980 Amsterdam NETHERLANDS |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | William H. Brewster |
| **Prior Registrations** | 2323571 |
| **Description of Mark** | The mark consists of the three-dimensional configuration of the bezel, the cushion-shaped case, and the bridge of a watch. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL-2(F) |
| **Live/Dead Indicator** | LIVE |

**TESS HOME** **NEW USER** **STRUCTURED** **FREE FORM** **BROWSE DICT** **SEARCH OG** **TOP** **HELP**

Trademark Electronic Search System (TESS)                                    Page 1 of 2

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 26 04:22:18 EST 2008*

`TESS HOME` `NEW USER` `STRUCTURED` `FREE FORM` `BROWSE DICT` `SEARCH OG` `BOTTOM` `HELP`

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

`TARR Status` `ASSIGN Status` `TDR` `TTAB Status` *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | PANERAI |
| **Goods and Services** | IC 014. US 002 027 028 050. G & S: boxes and cases for watches; jewellery and precious gem stones; chronometers, watches [ and clocks ] |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75569391 |
| **Filing Date** | October 13, 1998 |
| **Current Filing Basis** | 44E |
| **Original Filing Basis** | 1B;44E |
| **Published for Opposition** | January 18, 2000 |
| **Registration Number** | 2340290 |
| **Registration Date** | April 11, 2000 |
| **Owner** | (REGISTRANT) Cartier International B.V. CORPORATION NETHERLANDS Herengracht 436 B.P. 3980 Amsterdam NETHERLANDS |
| | (LAST LISTED OWNER) OFFICINE PANERAI N.V. COMPANY NETHERLD ANTILLES SCHARLOOWEG 33 CURACAO NETHERLD ANTILLES |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Helen M. O'Shaughnessy |
| **Priority Date** | March 19, 1997 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

`TESS HOME` `NEW USER` `STRUCTURED` `FREE FORM` `BROWSE DICT` `SEARCH OG` `TOP` `HELP`

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY